The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit are admonished to draw an eye and give their attention. The Court is now sitting. God save the United States and this Honorable Court. All right. First case we'll hear this morning is Best Medical v. Eckert & Ziegler and Mr. Brady. Good morning, Your Honor. Thank you. This is our second trip to the court. We have… I remember you. Yeah. Thank you, I think. This involves an award of attorney fees that the trial court had awarded to EZN. It's over $900,000 in attorney fees for a case in which EZN was awarded nothing, not $1. It was essentially a wash. Both parties alleged breach of contract. Both parties filed summary judgment motions. Both parties prevailed on the summary judgment motions and both cases were dismissed. What the court did determine, however, was that Best Medical… What did we find on our first time up? Did we address who the prevailing party was? In the opinion, the court did identify EZN as the prevailing party. That's not really up for review again now, is it? Your challenge is really as to the amount of fees on various reasons. Yes, Your Honor. Even though EZN was identified as the prevailing party, they still must demonstrate by clear and convincing evidence that the fees that they have requested are reasonable. You're not challenging the costs? There's $57,000 in costs. You're not challenging that? We're essentially focused on the attorney fees. Essentially? We're focused on the attorney fees. You're not challenging the costs? No, we're not challenging the costs. They award $871,000. Yes, that's correct, Your Honor. That includes a $300,000 supplemental fee that was granted since we were last at the Court of Appeals here. That was relative to their attorney fees for their efforts on the appeal. We have an award of attorney's fees like this that comes up from the District Court. What's our standard of review here for the award made by the District Court judge? It's an abuse of discretion by the lower court, by the trial court. Which is somewhat of a high standard for the appellant to overcome. It is, Your Honor. However, in a situation, and I think that the case law I've mentioned indicates the importance of the results that were achieved. Essentially, the relationship of the parties were not changed at all as a result of... I know, but we've already handled that. You can address the quantity assigned to the counterclaims, and you do in your briefs. But the fact that you are not the prevailing party is decided and the award of fees is going to... You know, this is one of those cases where it makes me wonder. We give you a remand. You go down, you have another hearing. You fight again with the district judge. You get some reduction, but in the meantime there's another petition for fees based on the ongoing efforts. You come back up here again a third time, and you know, pretty soon this is a work program for the attorneys. Well, actually we really never had an opportunity to... The district judge, you made a big case. Everybody argued. The court spent some time and some detail explaining, and you claim the fees are high. And based on your own fees, they do sound pretty high. But there's also... It's laid out, the hours, and the court made adjustments, and the parties made adjustments. And for us to get involved ourselves at this level is almost impossible. What we would have to do is send it back. Isn't that right? Well, I think the court is in a position to, I think, make a decision relative to whether or not the fees that were requested were reasonable. Then we'd have to go through all the records, the billing records, all the documents, and make assessments like a district judge would. And that's not our role. Actually, Your Honor, we didn't have the opportunity to argue that with the district judge. The district judge basically issued a second opinion after this court issued their remand. And so that wasn't an opportunity that we had to necessarily argue that point with him. But I think on the face value of the request, the request by Eason demonstrates that the fees are really beyond the pale. To request 132 hours for preparing a response for a TRO or 123 hours to prepare an answer to a complaint and counterclaim 300 hours to do the fee petition, I think these are hours that are so far beyond what is reasonable that on the face of it. Are you saying that that recitation of facts proves as a matter of law that the fees were inappropriately awarded and therefore the district court abused its discretion? Well, I think that the manner in which the court abused its discretion was that they did not necessarily follow the remand instructions, which were to apply the case specifically to the elements of the Johnson case. And really, I think what the district court did was just provide boilerplate conclusions about the elements without really evaluating what was being requested by Eason. And I certainly didn't do it carefully enough. Is that what you're saying? I'm not sure that the that they did it. The district court did it at all because there's no indication that there was an evaluation that these hours were reasonable. This was not. You challenge the lodestar figure that. Yes, we challenge the number of hours primarily. We didn't even have an argument. And you challenged the deductions for unsuccessful claims? Yes, we challenged that they were. And you challenged the ruling on the degree of success? Yes, that's. Let me ask you this. If the court was right on the first two of the Hensley factors, that is the lodestar figure and the deductions for unsuccessful claims, what would be the floor under the third factor requiring an assessment of the easy and his degree of success? Well, essentially, they had no success. There was no there. The relationship of the parties are no different than they were before we walked into the courtroom. So you the lower court simply said you have now can go to arbitration as you are required. You have the you have the also that superimpose on that the law of the case. That easy and was the prevailing party. Must it be awarded at least 51 percent of the net lodestar figure? I don't know if it's a if it's a hard and fast rule that 51 percent. Well, that's what that's exactly what I'm asking. But no, I think I think it's dependent. Could they could they be awarded less than the 51? Yes, I believe that you'd say they could be awarded less than the 51. So they wouldn't be wouldn't stop at 51 percent. Yes, that is. I, I would believe that. I believe the court has the power, in fact, to to basically even though that easy and was declared the prevailing party. And that is the law of the case. The court can still come back and say, but your reasonable fees are zero. We can't have the law of the case. No, no, I don't. And I don't think it's necessary. And you don't take issue with the proposition. I don't I wouldn't think that you were seeking eight million dollars in damages at least. Yes. And they were seeking over three million dollars. But you were right. We were. They were seeking three. And you were. Yes. OK. I think it's within the law to even allow no attorney fees, even though they are the prevailing party, because the the requirement is still that the fees be reasonable. And if you have a situation where. Admittedly, say they are the prevailing party. But if their position has not been changed, any is a reasonable fee. What is a reasonable fee? Is it zero? It could possibly be zero. Now, I'm not even making that argument. Personally, I think that in our evaluation of it, it appeared that even 50 percent of what the law firm was asking for is would even be understandable under the circumstances. But given the hours. Is there an arbitration that has been noticed? There has not. Do the parties anticipate arbitrating this? Yes, I anticipate it. I don't know if any expense has been incurred as of yet. So I think that that's one of the reasons perhaps why that hasn't been noticed or scheduled. But as I think when one evaluates the amount of hours that are requested for the tasks, given the nature of the case, it is simply not even understandable how that many hours can be expended on the particular tasks that they've indicated. To spend 300 hours preparing the fee petition just seems extreme. To spend over 132 hours responding to a TRO seems extreme. 123 hours to answer the complaint is extreme. You told Mr. Court Judge all this and you told him why you thought that was the case. Yes, in our briefs we did. We did not have an argument. He disagreed with you. Yes, yes. He issued an opinion granting the fees. However, I'm not sure there is any evidence from his opinion that he actually applied the standards and the elements that were necessary and actually said we find that 130 hours to answer the complaint is a reasonable thing, given these circumstances. There are no special circumstances in this case that would warrant 130 hours to answer the complaint. In our remand order, we suggested that looking at the gross fee, we tended to agree with you. We said that they might be acceptable and asked the court to take a look at them and apply the Johnson factors. And the court did take a look and applied the Johnson factors and concluded it was not acceptable. Now, in that circumstance, even if we disagree, don't we affirm the district court if the court had evidence to support its exercise of discretion? I don't think there is evidence to support it. I think what they did was... I'm trying to get the standards straight. Yes, I recognize certainly that an abuse of discretion is a very difficult standard to overcome. But I think the trial court at least had to have some rationale for explaining why 130 hours to answer a complaint is reasonable under this circumstance. Because it is so far above and beyond what one would ordinarily expect. That there has to be something special. There has to be an answer plus. There has to be something unusual about this. And I think that the court was obligated to articulate that. And to allow the parties and this court to recognize that there is something special about this, this case, that it warrants 130 hours to answer the complaint and to issue a counterclaim. And that's what was not done by the opinion. The trial court did not have another hearing about the matter. The trial court did not have an evidentiary hearing about the costs. The trial court merely issued another written opinion upon reading this court's opinion and its remand order. And essentially made conclusions based on the factors. Went down each factor of the Johnson case and said, well, we find this to be reasonable. But didn't really ever indicate or articulate any reason why is 130 hours to answer a complaint reasonable here. And I think that's where the judge, that's where the trial court abused its discretion by not articulating those specific reasons. Are you familiar with a case we issued here a few months back on McAfee? Does that ring a bell? McAfee case? Yes. Does that have any impact on any of this? I believe McAfee was a civil rights case where there was an issue on the fee of a civil rights claim. Yes, it was. Yes. Does it have any impact, the McAfee analysis impact on this at all? Well, I think it stressed the issue of the results of the case and how the results are a very critical fact from my recollection. And so I think that aspect of the case I think is positive for our argument. I think supports our argument that of all of the factors that may be the most critical is that what was the overall result of the case? What really happened? How were the parties' relationships changed? What type, although they were the prevailing party, how much did they prevail? It's not sufficient to merely be a prevailing party. When it comes down to actually deciding how much fees are reasonable, there has to be a high degree of prevailing, if you will, as opposed to merely squeaking by and happen to be called the prevailing party because the court determined that Best Medical had defaulted on the contract. They're still in the position of having to go to arbitration, which they were in the position to do before they ever filed their breach of contract claim. So really nothing has changed. The lower court case was really a wash, a complete wash. Okay. You have some rebuttal? Thank you. We'll hear from you then. Mr. Polonis? Good morning. May it please the court, I'm happy to be here again to argue on behalf of Eckert and Ziegler. Eckert asked this court to affirm the judgment of the district court in every respect. First and foremost, the district court, the award was fair and reasonable, and it did not abuse its discretion in following this court's mandate precisely. Second, as we pointed out in our responsive brief, many of Best's current, present arguments were waived because they weren't preserved by being argued in the district court below. You can't simply raise new arguments at this level. The final thing is, as we pointed this out again in our response to their fee petition, or again, our brief in support of our fee petition, is that Best contradicted most, if not all, of its current complaints with the fee petition it submitted in the district court below. The posture of this case is a bit unusual. Of course, we've been here before. The case was remanded with a specific instruction to the district court, apply the Johnson factor so that we can see what work he did. Judge Hilton took that very seriously, and we did. The parties did. We were brought before Judge Hilton after we filed our second fee petition. He asked us what we thought we should do about this case. We both sides submitted findings of fact and conclusions of law, what we thought the right order would be to comply with this court's mandate. So Best is simply wrong when it says we didn't get a chance to argue about these fees, because they got a chance to argue the first fee petition all over again and our new one. They had every opportunity to examine the evidence and present the best arguments they possibly could. Now, what Judge Hilton ended up doing was much more than he had to do. He was required to cite those factors that supported a reasonable fee. But he looked at all 12 of them. Even if they had nothing to do with the case and said, I find that this neither justifies nor detracts from the fee request, but there were three of them, three or four, which he focused on, which really do justify this fee request. And, of course, the first one is the mountain controversy. Contrary to Best's efforts at this stage to try to diminish what was trying to be accomplished in this case, there was a lot at stake here. Not only did they come in asking for an emergency relief and a preliminary injunction and then eventually a permanent injunction, but $8.2 million of damages, another 300,000 euros in play for prepayments they had made to us for other parts of the contract. For Eckerd, it was, again, it could have a potentially devastating impact on us if we had to continue, first of all, stop the work, which we did once the motions for preliminary relief were filed, but have to keep holding on to this property, Best property, in our valuable manufacturing space, rent-free, and we can't use it for anyone else. So there was a lot at stake here, and the parties conducted themselves accordingly as if there were a lot at stake, as if it was hotly contested, and it was from the beginning to end. It still is, even to this day now, almost four years from the date Best filed this complaint. The other Johnson factor, again, that played very prominently into the court's analysis was the labor and the time that was necessary to the effort. Of course, right from the beginning, and again, Best attempted to diminish what had to happen at the beginning, but this motion for TRO and preliminary injunction was filed with six days' notice. Our lawyers, Eckert's lawyers, had to go to the defending's effort with no discovery. It was an evidentiary hearing. The judge took affidavits from both sides, and it was, again, hotly contested. Immediately after that, there was, of course, the contemplation and the drafting of an answer and a counterclaim. A lot of discovery in this case, written discovery. This case sprang from another case that was, again, highly document-intensive. Dewey and LaBeouf, the former law firm, represented QSA, our predecessor in that case. A million dollars in fees occurred in that case alone to get to the settlement agreement, where we thought Best would finally live up to its obligation. We still don't have that, even to this day. Lots of depositions and expert witnesses. Unusual for a breach of contract case to have this degree of expert witnesses, but we had the disciplines of vascular brachytherapy represented on both sides, the manufacture of radioactive sources, and then experts on the development of this unique production line. So there was a lot of high-level thinking that had to be done on both sides, and a lot of work getting to know the facts of this case. There were voluminous summary judgment motions, motions to strike witnesses and experts, trial preparation because the hearing for summary judgment came so close to the eve of trial. But a lot of this was spent on your own counterclaims, too, that you lost. Well, not so much. You all had four counterclaims, right? We had four counterclaims. And you lost them all. Well, what happened was we lost our fraud claim. That's true. And we deducted for that. That was an unsuccessful counterclaim required under the second step of the Johnson analysis. Now, unsuccessful claims that were related to successful claims are not you don't need to deduct for those. So we had breach of contract claims that were essentially. So you say that you agree that with the lodestar figure. I do. And you agree that the court made appropriate deductions for unsuccessful claims. Yes. Yes. What would be the floor? I save you the same question I asked them, under which the third factor of Hensley required an assessment of your degree of success. The degree of success. You defeated their claims. Correct. But you lost your own. Four of them. Well, we did in one respect. And this case was best case. We were doing our work in Germany, hoping not to be interfered with, and best file this lawsuit. It lost on every level. We had compulsory counterclaims that fell right to the ledge of rule 13. We had to get guidance from the court. We had an arbitration provision that could have given us relief, but we didn't know that at that stage. And so to avoid being whipsawed by the scenario where you don't litigate counterclaims, and you go to arbitration, the arbitrator says, we should have litigated those, Mr. Lonas. I can't hear your case. We had to test that, the scope of that arbitration clause, which we did. But, again, those other unsuccessful reach of contract claims for the letter of credit, those were things that were going to be litigated in the first place anyway, because the failure to post the bond or to get the letter of credit necessary to support their cleanup work in Germany was our first and primary defense to their breach of contract claim. You breached first by not getting that letter of credit. So we were going to litigate that and prove that anyway, whether we pursued it as a counterclaim or an affirmative defense, which we did. And as to the success of the counterclaim, the central successful moment in the whole case was the fact that we got the declaration we asked for that best defaulted under the settlement agreement. And that gives rise to everything we need from here on out, including recovering our costs and our loss of use damages in an arbitration. Well, he doesn't dispute your costs, he said. Well, I mean the cost to do the cleanup in Germany, the decommissioning. I'm talking about attorney's fees. Yes, sir. So your position, I assume, is that the compulsory counterclaims that you filed, with the exception of a fraud claim, that all of those relate directly to a claim or defense brought by VEST? Yes, and on which we succeeded at every level. The other factor which the court took into mind, which I think is important here, is what are the fees generated in like cases? And the court looked at a whole range of, obviously, breach of contract cases run the gamut, from fairly simple to exceedingly complex, with fee awards all over the place in that area. We found cases, one case that had been here, signature of flight. That type of argument is almost meaningless, the range of contracts and complexity of contracts. It seems to me another type of case, it may be more meaningful, but I'm not sure that argument leads to anything. You can find a breach of selling a lemonade, a 12-ounce lemonade or whatever. Yes. Or it can be a highly complex case going on for years. I'm not sure looking at other cases just in the abstract contributes to anything. It is extraordinarily difficult to try to find like cases. My only point was Judge Hilton did rely on that as a factor in this case. It justified the fee award. Really in contrast to what VEST was trying to argue, and argues it again before this court, this was a relatively simple contract case, which it wasn't. And it's like a case where there was very little contest going on, where there's not very many depositions and no summary judgment briefs. That's not like this case at all. There are other factors, though, I think that doomed this challenge to the fees, other than just the lodestar factors that were applied specifically by the judge here. One is, as you've already noted, the standard here on review, the abuse of discretion standard. The Supreme Court said just over three years ago that it could not think of an area where micromanagement of the district court was less appropriate. And that's because the district court had its finger on the pulse of this case. It knew what was happening. It knew how strenuous the opposition was on this side. None more obvious than in the post-judgment discovery phase, when VEST was taking positions like federal collection procedures don't apply in the case of a federal judgment. That's the kind of opposition we faced at every stage in this law. So they were raising frivolous issues and running up your fees? That's exactly the point. That's the point you're trying to make? Yes, sir. I am making that point. But, you know, again- Are you familiar with that McAfee case? I am familiar with that case. I think that's a case where- You're saying it doesn't have anything to do with it, or it informs what we're doing, or what- Well, what I remember, that's a case- I've had to read a lot of cases to get ready for today, and what I remember about that case, I think it was a civil rights case where there was only one contesting party, a plaintiff, who got nominal damages. And I think there was some reduction at the end for degree of success because the plaintiff was asking for a whole lot more than they got. I think that's not like this case. This case was- Again, this was best case. Well, that's what I was asking him about the degree of success issue, whether there's a floor to it, where there has to be at least 51% of the lodestar figure. You'd say you want 100% of your lodestar figure, even though you didn't prevail on all your counterclaims. Well, 100% less the deductions for unsuccessful claims, and less the- So you do think there ought to be an appropriate reduction for degree of success? Well, I think the district court already made those. The district court's already made them, right. That's your point, but you agree there has to be an appropriate reduction for degree of success. Yes. That's part of the Hensley analysis. And Judge Hilton, you say, did discount for degree of success. Well, he may not have called it degree of success. He may not have used those words, but we had- Keep in mind, we had an expert witness in this case who looked at everything from front to back. And he advised us, and he mentioned in his affidavit, I've looked at the deductions here. I would advise them on the deductions. Expert witness on fees. Yes, sir. That's right. You're not talking about an expert on the merits or anything. No, expert witness on fees. Mr. Murphy- Expert witness on the fees. But he looked at not only what we bill but what we reduce for and said this is appropriate to do this. When you look at factors that went into the lawsuit and how strenuously it was being fought and where there was some not perfect success on the merits. You do have to make reductions in an effort to exercise billing discretion, and you did that. And even when we came up with the second petition, we deducted even a higher percentage than the first time. So I think even though Judge Hilton didn't talk in those terms, that third step you're mentioning of Hensley, he's already done the analysis for degree of success. It was already in there. Okay. Yes. Yes. The other thing I think which is pretty important in this case is that when BESS takes the looks at our bills and makes these comments, criticisms, you can't block bill and expect to receive a full fee award. You can't bill your full rate for travel time. You can't have paralegals doing compensable work. Those are all fair criticisms, I would say, in the abstract, but they're very, very difficult to make when you submit your own fee petition for your lawyers and they do the very same thing. Sounds to me like all lawyers are subject to criticism. They are. They are. The question, though, about some of these things, and block billing is a good example, and they hit this pretty hard in their opposition to our fee petition, the question is not whether BESS can figure out what we're billing and whether it was reasonable. It's whether Judge Hilton could do that. He's the finder of fact. He had the bills in front of him. He had the supporting affidavits. They were lengthy because they detailed everything we did in the case. He knew the docket from beginning to end. It's whether or not he can make the determination, based on all the evidence in front of him, about whether the task of being performed central to litigation were reasonably billed for, and they were in this case. That's the issue. The problem, though, is that when you have, and I don't mean to make a personal attack on Mr. Brady. He's a gentleman, and we've got along well in this case. But it's very difficult, in my view, to make these criticisms when you submit your own affidavits under oath for your own lawyer saying these practices are fine and reasonable and necessary. And they've got a big credibility issue on that, I think. The final thing is, again, this is an issue about where we are at this level in the litigation. And that is best practices have been to raise certain arguments in the district court, not succeed on them, and then bring out a whole new batch of criticisms here. And that's not what this review is about. It's hard for the district court to err when you don't have a chance to even address the argument. And that's what they've done with a lot of their criticisms in this case. All right. Thank you, Mr. Long. Thank you. Mr. Brady. Mr. Brady. Thank you, Your Honor. Your Honors, I just have a few comments, if I may. I do not know of any argument that we have waived, that we have not brought up in the lower court, that we have brought up here. All of these arguments were contested. I think it's a little misleading, however, to state that Judge Hilton, the trial court, did an analysis and took a certain amount off for a lack of success. Actually, there was only a 7% reduction that was applied for a lack of success, and that is an easy end voluntarily. It took that amount off relative to their fraud charge or their fraud claim. And I think that's our point. I don't think the trial court did really anything in terms of evaluating each bill, or there's no indication that anything was done. Well, the court says it did. The court seems to say it did. It had all the original petitions, and it had all the papers, and it had the hearing, and it got our remand. And apparently the district judge was saying to us, we don't understand, I've already looked at all of this. And he said, I'll tell you why I looked at it all, and he laid it all out. That's about what happened, isn't it? Well, I didn't read the lower court's opinion that way. He stuck with his guns. Yes, he did. And a lot of the language in the opinion was the same language in EZN's brief. It was almost a word-for-word transfer of the language. So I did not get an indication or a sense that these charges were evaluated in the context of this particular case. And it still seems certainly unreasonable to me that the amount of hours that were charged for particular tasks could actually are reasonable. I'm not saying they didn't work that many hours. I just don't think they needed to work that many hours in order to accomplish They were spinning their wheels. Yes. That's what you're saying. Yes, there were a lot of duplicative work where a lot of more than one They say you were raising a frivolous point. Pardon me? I don't know of any time we've ever raised the issue of a privilege. The particular circumstance that Mr. Lonis brought up about the collections was we believe that they had to follow state law relative to how they did their collection proceedings, and they thought that they didn't have to. So there were some aspects of the state statute that we didn't believe that they were following correctly, and so we brought that up to the court. I thought that was perfectly reasonable. I didn't think that was frivolous at all. So I don't think it's true that we were presenting them with frivolous issues, requiring them to spin their wheels. I think this sometimes is, unfortunately, the nature of litigation. Sometimes the hours can just explode, and I think that's what happened in this particular instance. I don't see how you make the connection between that many hours required to do these particular tasks. All right. Does that cover it? There is another issue. I think there were several instances of block billing also. There were times when there were just days, a couple of days that were put for two days from October 7th to October 10th, and then there were 15 hours spent on doing research or some aspect of that. How would you log legal research if you were sent to the library by your partner to research and you spend three days in the library? Do you cover all the subjects that you looked up, or could you just put legal research? Well, I think I would put at least a general topic, yes. I would put something that I was reading. I might have been reading the newspaper some of that time, I don't know, but there should be something other than just the word research, I think, that would indicate more specifically. I think that's all I have. All right. Thank you, Mr. Brady. We'll come down and greet counsel and then proceed on to the next case.
judges: Paul V. Niemeyer, Robert B. King, G. Steven Agee